USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/29/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

BRUCE LEWIS, JACQUELINE GRAHAM,
ANTHONY VIGNA, ROCCO CERMELE, PAULA
GUADAGNO

                Defendant.

16-CR-786 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Defendants Bruce Lewis, Jacqueline Graham, Anthony Vigna ("Defendants") were indicted on November 29, 2016 on one count of conspiracy to commit mail fraud, wire fraud and bank fraud in violation of §1341, 1343, and 1344 of Title 18, United States Code. (*See* ECF No. 2.) Presently before the Court are several of the Defendants' motions (ECF Nos. 118("Vigna Br."), 119 or Defendant Graham's omnibus motion ("Graham Br.") and 121 ("Lewis Br.")). The Defendants filed motions seeking the following relief: (1) Motions for Severance (Graham Br. 10-12, Lewis Br. 19-20, Vigna Br. 1-5); (2) Defendant Lewis's Motion to Suppress evidence of emails seized pursuant to an email search warrant issued on or about November 9, 2012 or alternatively, for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) to ascertain whether such evidence should be suppressed; (3) Defendant Graham's motion for a bill of particulars pursuant to Federal Rules of Criminal Procedure ("FRCP") 7(f) (Graham Br. 2-3) and to disclose the identity of confidential informants pursuant to Rule 12 of the FCPR (Graham Br. 13-14); (4) Defendant Graham's request for discovery and disclosures including Fed. R. Crim. P. 16 discovery, FRE 404(b) disclosures, *Brady* disclosures, *Giglio* disclosures, Jencks Act materials and witness lists (Graham Br. 3-9, 17); (5) Defendant Graham's request to preclude the Government's cross-

examination (Graham Br. 3-21) ; (6) Defendant Lewis's request for a dismissal due to pre-indictment delay; and (7) Defendant Graham's request that the government disclose the identities of confidential informants. The Government filed a Memorandum of Law in Opposition to the Defendants Pretrial Motions. (ECF No. 131, ("Govt's Br.") .) Defendant Vigna submitted a reply ("Vigna Reply") to the Govt's Br. (*See* ECF No. 133.)

For the following reasons, Defendants' Motion are DENIED.

## BACKGROUND

The facts summarized herein are taken from the Indictment (ECF No. 2) and the affidavits and exhibits submitted in relation to Defendants' Motions. The Defendants and others are accused of executing a fraudulent mortgage scheme through the Terra Foundation of Valhalla, New York ("Terra"). (Indictment ¶2.) The Defendants allegedly told mortgage borrowers who were having difficulties making payments on their mortgage loans that Terra could eliminate their debt for a fee. (Indictment ¶7.) Once a client paid Terra's fee, the Defendants and others filed false mortgage discharges, usually fraudulently signed by Defendant Bruce Lewis as an "agent" of the lending bank, with county clerks in Westchester and Putnam Counties and with town clerks in Connecticut. (Indictment ¶8.) Each fraudulent discharge involved a loan made by a federally insured financial institution. (*Id.*) The Defendants discharged mortgage loans with an aggregate loan principal of more than $33 million.

## ANALYSIS

### 1. Motions for Severance

Each of the Defendants asks to be tried separately. They argue that severance is warranted because of (1) the disparity in the volume of the evidence to be presented against each co-defendant, and (2) the inability to call a co-defendant as a witness, and (3) that ultimately a joint

trial would compromise their constitutionally protected right to a fair trial. (Graham Br. 10-12, Lewis Br. 19-20, Vigna Br. 1-5.) The government, however, argues that Defendants have failed to overcome the strong presumption in favor of a joint trial. (*See* Govt's Br. 31.) Defendant Lewis also argues for severance on the basis that joinder would be prejudicial to his particular case. (Lewis Br. 19.) Lewis claims that the co-defendants were forging his name on documents. (*Id.*) He also claims in his defense that he relied on the advice of Vigna, who was a licensed attorney, and a CPA, as well the advice of Graham, who was also a licensed CPA. *(Id.)* Defendant Graham does not make specific arguments as to why the Court should grant her severance, but she also writes in her motion that she joins in the motions of her co-defendant to the extent applicable and appropriate. (Graham Br. 3).

The key arguments in favor of severance are found in the Vigna's Brief and Vigna Reply. Vigna first argues that his case should be severed from Mr. Lewis's case because the two defendants will present conflicting, antagonistic and irreconcilable defenses. (Vigna's Br. 1-5.) Vigna points to Lewis's statements in pre-trial motions suggesting that he was duped by Vigna and Graham, and that Lewis relied entirely on their advice. (*Id.* at 3-4.) Vigna states that his position will be antithetical and dramatically opposed to Mr. Lewis's position. Vigna states that he was used and victimized by Mr. Lewis and others to perform discrete legal services that may have furthered the criminal scheme but he did not do so knowingly or with criminal intent. (*Id.* at 4).

Both Graham and Vigna argue that the evidence against Lewis is overwhelming, and that by contrast, the evidence against them pales in comparison. Graham argues that the Government will introduce a huge amount of documentary evidence that bears Mr. Lewis's name, signature or both and that there will be evidence not otherwise admissible against Graham admitted at trial.

3

(Graham Br. at 11.) However, Graham does not identify which pieces of evidence would be inadmissible against Graham and therefore, the argument is not convincing.

Vigna first argues that the "evidence, especially the volume of documents, that implicate Mr. Lewis and others is enormous. By contrast, the documents concerning Mr. Vigna's activities are few and, in many instances ... are exculpatory." (Vigna Br. 4). Thus, Defendant Vigna argues the volume of evidence that will be presented against Lewis will inevitably result in spillover prejudice. (*Id.* at 1). Second, Vigna argues that Lewis, as a *pro se* litigant, has repeatedly made bizarre assertions of fact in Court documents and absurd statements of law.[1] *(Id.)* Vigna argues that Lewis's evincing of mental instability, such that the Court ordered a competency examination, further supports his position that forcing Defendant Vigna to stand trial with Defendant Lewis would be fundamentally prejudicial and unfair.

As stated in Fed. R. Crim. P. 8(b), multiple Defendants who allegedly "participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses" may be charged in a single indictment. However, Fed. R. Crim. P. 14 (a) allows a court to "order separate trials of counts, sever the defendants' trials or provide any other relief that justice requires" in cases where "the joinder of offenses or defendants in an indictment ...appears to prejudice a defendant or the government."

The Supreme Court has expressed a "preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States,* 506 U.S. 534, 537 (1993). The purpose underlying the rule is to promote "economy and efficiency and to avoid a multiplicity of

---

[1] Vigna's moving papers cite, for example, a statement by Lewis that Vigna characterizes as a "bizarre assertion of fact," which is: "In the early fall of 2011 [he] was offered 3.8 Billion in Euros for Commercial Liens ... but I turned it down as [his] goal was always only to help pay down the national debt." (ECF No. 92 1-2.) Vigna characterizes another Lewis statement as a "bizarre assertion of law": "I am not a U.S. citizen, I have always been and [sic] Alaskan national, but have been forced by unlawful arrest and imprisonment to now be a New York national." (ECF No. 103 at 2.)

4

trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Bruton v. United States*, 391 U.S. 123, 121 n.6 (internal quotation marks omitted). In *Zafros*, the Court rejected petitioner's argument that under Rule 14 the Court should adopt a bright-line rule mandating severance whenever co-defendants have conflicting defenses. 506 U.S. at 937-938. Instead, the Court stated that the district court should grant severance under Rule 14 only if there is a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 538. The Court cited a few examples that could increase the risk of prejudice, but concluded that the risk of prejudice is a fact-specific determination left to the discretion of the District Court. *Id.* at 539, 541. Ultimately, the Court affirmed the Court of Appeals' judgment that the *Zafros* cases were rightfully not severed. In reaching that conclusion, the Court cautioned that "it is well settled that Defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id.* at 939. The Court noted that Defendants do not have a right to claim that "relevant and competent testimony would be prejudicial merely because the witness is also a codefendant." *Id.* at 938. Finally, the Court suggested that jury instructions that the Government had the "burden of proving beyond a reasonable doubt" that each Defendant committed the crimes with which he or she was charged could provide a sufficient curative solution to any possibility of prejudice. *Id.* 541.

The Second Circuit has held that severance is necessary where there is a risk of "prejudicial spill over" or "irreconcilable defenses" between co-defendants. *United States v. Salameh*, 152 F.3d. 88, 115-116 (2d. Cir. 1998). Courts have considered a variety of non-inclusive factors: "(1) The number of defendants and the number of counts (2) the complexity of the indictment (3) the estimated length of trial (4) the disparities in the degrees of the involvement in the overall scheme

(5) possible conflict between various defense theories; and (6) prejudice resulting from evidence admissible to some of the defendants, but not others." *United States v. Santiago*, 174 F. Supp. 2d 16, 22 (S.D.N.Y. 2001)(citing *United States v. Gallo*, 688 F. Supp. 736, 749 (E.D.N.Y. 1987)).

The Second Circuit Court of Appeals has also held that a showing of mutually antagonistic defenses may not be enough to *per se* merit severance, but rather, a defendant may be required to show that the defenses are "so irreconcilable as to conflict to the point of being mutually exclusive." *United States v. Cardascia*, 951 F.2d 474, 484 (2d. Cir. 1991); 152 F.3d at 115. *See also United States v. Scott*, 637 F. App'x 10, 13 (2d. Cir. 2015), *cert denied*, 137 S.Ct. 208 (2016) ("It is not enough to demonstrate that separate trials would have increased the chances of the appellant's acquittal ... the defendant must instead show prejudice so severe that his conviction constituted a miscarriage of justice" and that the denial of the motion to sever amounted to a "denial of a constitutionally fair.").

Defendant Vigna raises the issue of Defendant Lewis's *pro se* status and mental competency as factors that justify severance. However, these are not part of the above-listed factors and there is no case law that supports the notion that defendants have a right to severance if their co-defendant is proceeding *pro se*. In fact, the Second Circuit has suggested the contrary. *United States v. Tracy*, 12 F.3d 1186, 1194 (2d. Cir. 1993)("The mere fact that a codefendant is proceeding *pro se* is not in itself a ground for severance."). As another factor, Defendant Vigna suggests Defendant Lewis has made "bizarre assertions" of fact and law in his papers to the Court. The prosecution correctly points out that while Lewis's legal theories may be unfounded, the defense provides no reason to believe that his actions during trial will be so fundamentally disruptive as to deny the co-defendants their rights to a fair trial. Furthermore, this Court deemed Mr. Lewis mentally fit to stand trial *(See* Minute Entry of July 26, 2017) and so Defendant Vigna's argument

that Mr. Lewis is mentally incompetent is irrelevant. This Court also notes that it appointed a legal advisor to Mr. Lewis, who will help prepare his case for trial and further diminish the possibility of any potential disruptions that could adversely impact the other Defendants.

Defendant Vigna also raises the issue of disparities of involvement between Vigna and Lewis. However, the Second Circuit has concluded repeatedly that because evidence may be admissible against one Defendant but not another does not necessarily require a severance. *United States v. Carson*, 702 F.2d. 351, 367 (2d Cir. 1983). *See also United States v. Cardascia*, 951 F.2d 474, 483 (2d. Cir. 1991) (no due process violation where defendants forced to sit through a month of unrelated evidence of a separate conspiracy involving co-defendants); *United States v. Chang An-Lo*, 851 F.2d. 547, 557 (2d. Cir. 1988). Thus, the fact that one defendant played a comparatively lesser role in the overarching alleged scheme does not require severance. That is especially so when jury instructions can avoid potential prejudice by instructing jurors that the Government must prove distinct acts involving each Defendant.

Finally, the Defense's argument that antagonistic defenses warrant severance is also without merit. It is notable that the arguments offered by the *Scott* defendants and which were ultimately rejected by the Second Circuit are similar to the arguments offered here by the Defendants. While, the *Scott* case is a summary order and does not carry precedential weight, we find the similarity of the facts to be compelling. The *Scott* defendant contended that the co-defendant's anticipated legal defenses—that the co-defendant lacked the intent to defraud because he relied on Scott's legal advice—are similar to the argument Vigna makes about Lewis's anticipated defenses. Numerous Courts have rejected what has been called in common parlance "the finger-pointing argument." *United States v. Sezanayev*, No. 17 CR. 262 (LGS), 2018 WL 2324077, at *2 (S.D.N.Y. May 22, 2018) (citing *Cardascia*, 951 F.2d at 485). As stated above,

jury instructions can cure prejudice caused by allegedly antagonistic defenses. *United States v. Hameedi*, No. 17 Cr. 137 (JGK), 2017 WL 515 2991, at *4-*5 (S.D.N.Y. Nov. 3, 2017).

For these reasons, the motions for severance are denied.

## 2.     Motion to Suppress[2]

On November 9, 2012 Agent Michael Mazzuca applied for an email search warrant, asking to search seven email accounts—five maintained by Google, Inc. and two maintained by American Online, Inc. for specific emails related to potential violations of 18 U.S.C. §§371(conspiracy), 641 (theft of government funds), 1014 (mortgage fraud), 1341(mail fraud0, 1343 (wire fraud), and 11344 (bank fraud), "among other statutes." (Govt's Br. Ex. B ("Affidavit") ¶ 2). The Affidavit detailed specific evidence supporting probable cause to believe that the evidence, fruits and instrumentalities of the alleged crime and ongoing investigation would be found in the email accounts.

There is a presumption of validity with respect to an affidavit supporting a search warrant. *Franks*, 438 U.S. at 171. A defendant, however, "may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure." *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003). To be entitled to a *Franks* hearing, the proponent's position must be "more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* The defendant "must make a 'substantial preliminary showing' that a false statement was made in the search warrant affidavit either 'knowingly and intentionally' or with 'reckless disregard for the truth,' and that 'the

---

[2] Defendant Lewis did not specifically address, dispute or offer a counter-narrative of the facts as to how the government made its warrant application. Lewis concludes simply, without supporting his allegations, that the warrant application was pursued with the "FBI's intentional or reckless falsehood" and that the application "defames him." (Lewis Br. 9). Thus, the Court adopts the government's factual recitation with regard to the search warrant application.

8

allegedly false statement is necessary to the finding of probable cause.'" *United States v. Mandell*, 710 F. Supp. 2d 368, 372 (S.D.N.Y. 2010) (quoting *Franks*, 438 U.S. at 155-56). "A misrepresentation or omission is intentional when 'the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth.'" *Awadallah*, 349 F.3d at 64 (quoting *United States v. Canfield*, 212 F.3d 713 (2d Cir. 2000)). To meet this standard, a defendant must support his allegations of deliberate falsehood with "an offer of proof." *United States v. Cook*, 348 F. Supp. 2d 22, 29 (S.D.N.Y. 2004) (quoting *Franks*, 438 U.S. at 171). Materiality rests on a determination of whether the "alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." *Id.*

In this case, the Affidavit detailed specific evidence supporting probable cause to believe that evidence, fruits and instrumentalities would be found in the email accounts. Among other things, the Affidavit discussed: (1) the nature of the investigation (Affidavit ¶¶ 8-12); (2) fraudulent documents discovered by the Westchester County Clerk's Office indicating that the "Terra Foundation" was engaging in mortgage fraud and filing fraudulent satisfaction of mortgages on various loans ( Affidavit ¶¶ 9-10); (3) documents and emails seized during the execution of a previous state-judge-authorized warrant to search the offices of the Terra Foundation (Affidavit ¶¶ 11-12); (4) e-mails and interviews indicating that Bruce Lewis was a participant in the Terra Foundation mortgage fraud scheme (Affidavit ¶ 12 (a)-(f); and (5) e-mails and interviews indicating Jacqueline Graham was a participant in the Terra Foundation mortgage fraud scheme (Affidavit ¶ 12(g)-(h)). The Affidavit then set forth a straight-forward search procedure:

> To ensure that a search is conducted only of those computer accounts and/or files described in Attachment and B [which described the Email Accounts] , the Affidavit and application for search warrants seeks authorization to permit employees of the Service Providers [Google and American Online] to assist agents in the execution of this warrant. The search

warrants will be faxed to the Service Providers' personnel who will b directed to produce those accounts and files particularly described in Section I of Attachment C [electronic mails and other data and information to be provided by Google and American Online]. Upon receipt of the information described in Section I of attachment C, government authorized persons will review that information to locate items described in Section II of Attachment C [the particular electronic mails, communications, data, and information to be seized by the Government].

(Affidavit ¶ 15.)

At the outset, it should be noted that a Defendant has no right to the suppression of evidence on Fourth Amendment grounds unless he demonstrates that he has a "legitimate expectation of privacy" in the area where the search was conducted. *Rakas v. Illinois,* 439 U.S. 128, 143 (1978). *See also Rawlings v. Kentucky*, 448 U.S. 98, 104-105 (1980) (citing Rakas 439 U.S. at 131 n. 1, and *Simmons v. United States*, 390 U.S. 377, 389-390 (1968)); *United States v. Salvucci*, 448 U.S. 83, 95 (1980); *United States v. Villegas*, 899 F.2d 1324, 1333 (2d. Cir. 1990). This standing requirement applies to searches of email accounts. "A person has no expectation of privacy in another person's e-mail account." *United States v. Lustyik,* 57 F. 3d 213, 223 (S.D.N.Y. 2014) (citing *United States v. Nazemzadeh*, No. 11 CR 5726 (L), 2013 WL 544054, at *2 n2 (S.D.Cal Feb. 12, 2013)).

Here, Lewis admits that he did not open the email account, rather someone else did. (Lewis Br. 14.) Lewis claims that there is "no nexus ...to email offshoreglobal@gmail.com and Bruce Lewis. (Lewis Br. 13.) Lewis further argues that the Google email account at issue belongs to someone else and that there is nothing connecting an email account to him. However, Lewis did not submit an Affidavit attesting to personal knowledge of the allegations set forth in the suppression motion. Therefore, the District Court must deny the suppression motion without a hearing. *U.S. v. Gillette*, 383 F.2d., 843, 848 (2d Cir.1967) ; *U.S. v. Ruggiero* 824 F. Supp. 379 at 391 (1993) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 100 (1980)).

In addition, Lewis's contentions that the Affidavit did not set forth probable cause and that the warrant was overbroad are without merit. Lewis makes broad allegations that the government's underlying case is based on false testimony without identifying which statements in the Affidavit were made with "deliberate falsehood" or a "reckless disregard for the truth" as the case law requires. A *Franks* hearing is not required in this situation, and the motion to suppress is denied on that basis, as well.

3.      **Request for a Bill of Particulars**

Defendant Graham asks the Court for a bill of particulars pursuant to FRCP 7(f). (Graham Br. ¶1.) FRCP 7(c) lays out the requirements for an indictment. An indictment must provide "a plan, concise, and definite written statement of the essential facts constituting the offense charged." Courts assessing whether a bill of particulars is warranted hone in on "'...whether the information sought is necessary, not whether it is helpful.'" *United States v. Ramos*, No. 06-CR-172, 2009 WL 602977, at *1 (S.D.N.Y. Mar. 3, 2009)(quoting *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990)). Courts in our Circuit have generally denied requests for a bill of particulars concerning the "wheres, whens, and with whoms" of the crime. *(U.S. v. Ma*, 2006 WL 708559 at *14 (S.D.N.Y. March 21, 2006)); *U.S. v. Bielli*, 697 F. Supp.2d 403, 409 (S.D.N.Y. 2010). A Defendant cannot employ a bill of particulars to preview the government's evidence. *See United States v. Guerrero*, 669 F.Supp.2d. 417, 426 (S.D.N.Y. 2009)( "Simply put a defendant may not employ a bill of particulars as a general investigative tool.")

Here, the indictment provides a detailed discussion of Graham's role in the alleged scheme to defraud mortgage borrowers who were having difficulties making payments on their mortgage loans as clients of Terra. The indictment details how the Defendants, to execute their scheme, filed nearly sixty false mortgage discharges with clerks in Westchester and Putnam Counties.

(Indictment ¶8.) The Indictment alleges that in order to receive payment for their services, the Defendants charged their clients a monthly fee and instructed some of those clients to obtain from financial institutions second or reverse mortgages secured by the properties from which the original mortgagees had been fraudulently discharged via the False Discharges. (Indictment ¶9.) However, it is premature to discuss whether the indictment is lacking in specificity given Local Rule 16.1. The rule provides: "No motion addressed to a bill of particulars or any discovery matter shall be heard unless counsel for the moving party files in or simultaneously with the moving papers an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court and has been unable to reach agreement." Counsel has not provided such an Affidavit. The filing of the motion for a bill of particulars without the requisite affidavit contravenes the Local Rule 16.1 and accordingly the motion is denied.

4. **Graham's motion to compel disclosure.**

Defendant Graham seeks discovery and disclosures pursuant to Fed. R. Crim. P. 16 discovery, FRE Rule 404(b) disclosures, *Brady* disclosures, *Giglio* disclosures, Jencks Act materials, and witness lists. (Graham Br. 3-9, 17.) As to the *Brady* material, nowhere in Defendant's motion does he allege the existence of exculpatory material that has not been turned over. The Government has represented that it has "complied with all of its discovery obligations, and will continue to do so." (Gov't Br. 45.) As there is no dispute at this juncture for the Court to resolve, Defendant's motion is moot in so far as the Government has already provided the necessary discovery and premature in the absence of an alleged discovery violation. This portion of Defendant's request is therefore denied without prejudice to renew. In the event that Defendant becomes aware of any failure on the Government's part to comply with its *Brady*

obligations, he may renew his motion at that time.

Defendant requests that any Rule 404(b) evidence be turned over 30 days prior to trial. Rule 404(b) requires the Government to provide "reasonable notice" in advance of trial of the general nature of any evidence of other crimes, wrongs, and acts it intends to introduce at trial. Fed. R. Evid. 404(b). Although 30 days is slightly larger than the standard disclosure period, the Court finds this timeframe to be reasonable. *See United States v. DiStefano*, 129 F. Supp. 2d 342, 351 (S.D.N.Y. 2001) (citing *United States v. Richardson*, 837 F. Supp. 570, 575 (S.D.N.Y. 1993)) ("notice afforded more than ten working days before trial has consistently been deemed by courts in this circuit as 'reasonable' within the meaning of Rule 404(b)"). The Court grants this portion of Defendant's motion and directs the Government to immediately disclose all Rule 404(b) evidence which it intends to offer against Defendant in sufficient detail to permit defense counsel to contest its admissibility. *See United States v. Lamb*, 945 F. Supp. 441, 466 (N.D.N.Y. 1996). Though the *Brady* portion of Defendant's motion to compel disclosure is denied as either moot or premature as a result of the Government's representations, the Government is reminded of its continuing disclosure obligations pursuant to Rule 16, *Brady*, and *Giglio v. United States*, 405 U.S. 150 (1972), with which the Court expects the Government's full compliance. *United States v. Gil*, 297 F.3d 93, 105 (2d Cir. 2002) (quoting *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001)) (*Brady* material must be disclosed "in time for its effective use" at trial).

Graham also has moved for disclosure of co-conspirator statements the Government intends to offer at trial (Graham Br. 17.) These statements, however, are not discoverable. *United States v. Percevault*, 490 F.2d 126 (2d. Cir. 1974) (Jencks Act prohibits disclosure of co-conspirator statements prior to the declarant's testimony; disclosure is not compelled by FRCP 16 (a)). In addition, Graham's request for witness list is premature, because as the government

stated in its brief to the Court, it has not decided whom it will call as witnesses at trial. *United States v. Ordaz-Gallarado*, 520 F.Supp.2d.516, 521 (S.D.N.Y. 2007). Furthermore, the Government argues convincingly that early disclosure could put cooperating witnesses in jeopardy by disclosure of the fact they are cooperating with the government. Finally, Defendant Graham has not shown why disclosure is material to her defense.

### 5. Motion to Government's Cross-Examination.

Defendant Graham asks the Court to preclude the Government from impeaching the Defendant's credibility with evidence of prior convictions and/or prior "bad acts," as well as acts done during the pendency of this case pursuant to FRCP, Rule 17.1, and the Federal Rules of Evidence, Rule 609, and the in limine doctrine enunciated in *Luce v. United States,* 469 U.S. 38 40 n.2 (1984). Graham further requests that the Court prohibit the Government from introducing any evidence of Graham's lawsuit in state court on its direct case. As discussed above, Defendant also seeks preclusion of her prior convictions (and other Rule 404(b) evidence) pursuant to Federal Rule of Evidence 609. The Government has not opposed this branch of Defendant's motion, has not indicated whether it plans to use such evidence to impeach Defendant should she testify, nor has it provided Defendant with sufficient detail of its anticipated Rule 404(b) evidence. (*See generally* Gov't Opp'n at 45.)

To the extent that a prior conviction operates as "proof of a prior conviction [] necessary for the offense to be substantiated," such convictions are generally not subject to exclusion. *United States v. Gilliam*, 994 F.2d 97, 100 (2d Cir. 1993) ("A prior conviction is not prejudicial where the prior conviction is an element of the crime"). Notably, Defendant has not indicated an intention to stipulate to a prior felony conviction, which is an element of the crime charged. But, to the extent Defendant has multiple convictions, prior bad acts, or uncharged crimes that the Government seeks to introduce as relevant to his credibility should Defendant testify, *see* Fed. R.

14

Evid. 609(a), the Court reserves judgment on Defendant's motion to preclude such evidence until after a hearing is held and the probative value of the evidence is weighed against its potential for prejudice. *See, e.g., United States v. Torres*, 610 F. Supp. 1089, 1093 (E.D.N.Y. 1985) ("the government will not be permitted to introduce evidence of the nature of the prior convictions unless and until defendant opens the door by contravening knowledge and intent"). The Government has no obligation to provide impeachment material pursuant to Rules 608 or 609 prior to trial if the convictions are less than ten years old. *United States v. Livoti*, 8 F. Supp. 2d 246, 250 (S.D.N.Y. 1998). Rule 609(b) does require, however, the Government to provide pretrial notice of its intention to use at trial convictions that are more than ten years old, and the Government is ordered to give such notice now. *Lamb*, 945 F. Supp. at 466.

Finally, with regard to Defendant Graham's request to limit cross-examination of the state court lawsuit, the Court also reserves judgment. The request is premature and the appropriate scope of her cross-examination cannot be addressed until she testifies on direct examination.[3] A Court reserves the right to make a determination as to whether Graham's lawsuit is relevant and admissible under the Federal Rules of Evidence.

### 6. Defendant Lewis's request for a dismissal due to pre-indictment delay.

Defendant Lewis argues that his indictment should be dismissed due to pre-indictment delay. (Lewis Br. 22-25). Lewis has failed to meet his burden of showing that he is entitled to dismissal. An indictment brought within the statute of limitations violates due process only where the defendant meets his "heavy burden" of showing that (1) the Defendant suffered "actual prejudice" as a result of the pre-trial delay and (2) such delay was "intentionally pursued by the government for improper purpose." *United States v. Cornielle*, 171 F.2d 748, 752 (2d. Cir.

---

[3] The Court notes, as of the date of this Opinion, it is not entirely clear whether she intends to take the stand.

1999). Here, his 2016 indictment was brought within the statute of limitations. Lewis suggests that at least seven witnesses have died, one has dementia, and another five have moved on. However, while he has identified some of these witnesses, which he claims are no longer available, he has not adequately provided information about what their testimony would have been or why it would assist him at trial. He has failed to show that any delay in charging him was the result of any intentional or bad-faith effort by the government. He has only made conclusory allegations that do not adequately meet the standard of showing "actual prejudice."

### 7. Defendant Graham's request for the disclosure of the identities of confidential informants.

Graham asks the Government to disclose the identity, Social Security number, dates of birth, address and criminal history of any confidential informants used by the government in this case, as well as any other information the Court deems appropriate, or in the alternative, make the informants available for counsel to interview pursuant to Fed. R. Crim. P 12. (Graham Br. ¶ 5.) However, Defendant Graham's brief does not explain how the informants' testimony is material to her defense. The Second Circuit has held that disclosure of the identity or address of a confidential informant is not required unless the informant's testimony is material to the defense. *U.S. v. Cruz*, No. 10-CR-188A 2012 WL 2255295 at *3 (W.D.N.Y. June 15, 2012)(citing *United States v. Saa*, 859 F.2d 1067, 1072 (2d. Cir.), *cert. denied*, 489 U.S. 1089 (1988). Therefore, Defendant Graham's request is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motions are DENIED. The Court will hold a

16

hearing today, Nov. 29, on the outstanding pretrial discovery issues discussed above.[4] The Clerk of the Court is respectfully directed to terminate the motions at ECF No. 118, 119 and 121.

Dated: November 29, 2018
        White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

---

[4] Pursuant to Court Order (ECF No. 39) Emma M. Greenwood was appointed as coordinating Discovery Attorney. The Government has been producing discovery on an ongoing bases and said Discovery has been distributed to the named Defendants.